**CIRCUIT COURT OF HENRICO COUNTY**

Cynthia D. Gray

    v.

Allstate Insurance Co.

               Case No. 87L351

Cynthia D. Gray

    v.

Great American Insurance Co.

               Case No. 87L352

               September 19, 1989

By JUDGE JOSEPH F. SPINELLA

The plaintiff was injured in an automobile accident. She was a passenger in the McKeever car. She brought suit against Cardea, the driver of the car which struck the McKeever car, and the plaintiff obtained a verdict against Cardea in the amount of $800,000.00. The Cardea car had primary liability coverage from State Farm Mutual Automobile Insurance Co. in the amount of $100,000.00, and this sum has been paid to plaintiff.

The McKeever car, in which the plaintiff was a passenger, was insured by Allstate Insurance. The policy carried uninsured coverage up to a limit of $100,000.00. The plaintiff is an "insured" under the provisions of this policy. Demand was made upon Allstate to pay the plaintiff

$100,000.00 under the underinsured provisions of the policy, and the plaintiff thereafter filed suit against Allstate.

Allstate filed as its defense that it is entitled to deduct the $100,000.00 paid by the liability carrier (State Farm) to plaintiff before Allstate is obligated to pay anything, and therefore the balance to be paid by Allstate is zero.

The plaintiff did not own an automobile, but she was a resident in the home of her father who owned several vehicles which were insured by Great American Insurance Company under one policy. By definition in the policy, the plaintiff was covered under the provisions of the policy and therefore is insured under the uninsured coverage in the policy.

At the time of the accident, the policy issued to Mr. Gray, father of the plaintiff, showed the liability coverage to be $300,000.00 each person, $500,000.00 each accident, and uninsured motorists limits to be $50,000.00 each person and $100,000.00 each accident. On January 1, 1983, § 38.1-380.2(B) became effective whereby uninsured motorists coverage automatically increased to the same limits carried as liability coverage unless the policy holder notified the insurance company in writing to lower the limits of the uninsured coverage. The notice required by law to be sent to policy holders whose policies were to be renewed, read in part:

> 3. Your total premium charge for your motor vehicle insurance coverage may increase if you do not notify your agent or insurer within 20 days of the mailing of the new or renewal policy, extension certificate, or other written statement of coverage continuance, or the original or renewal premium notice, as the case may be.

The plaintiff contended that no such notice was sent Mr. Gray nor did he authorize Great American, in writing, to reduce his uninsured motorist coverage from $300,000.00 to $50,000.00. Demand was made for payment of $300,000.00 under the underinsured motorist coverage, and when the defendant, Great American, refused, this suit was instituted.

38

The. defendant responds that the appropriate notice was sent to Mr. Gray and that he authorized the policy to be reissued "as is," and accordingly, the defendant reissued the policy containing uninsured limits of $50,000.00 each person. The defendant requested trial by jury on the interrogatories. A jury was impanelled, and the jury answered four interrogatories which found that Mr. Gray did not receive the required notice nor was he a producing agent on the policy, nor that he received a commission from the premium charge. The jury found that Mr. Gray did give an instruction to the agency to renew the policy "as is."

The issues presented to the Court are as follows:

1) Did the uninsured motorists coverage under the Great American policy automatically increase from $50,000.00 to $300,000.00 January 1, 1983, and at the time of renewal on July 1, 1983?

2) In what order are the various policies payable?

3) Which company is entitled to the offset of the $100,000.00 paid by State Farm and in what amount?

4) Is the plaintiff entitled to interest on the amount due from the two insurance companies?

*Issue No. 1*

The first issue as to the amount of underinsured coverage under the Great American policy is somewhat resolved by the jury's response to the interrogatories.

The statute in question is § 38.1-380.2(B) which provides, in part, as follows:

B. On and after January 1, 1983, no new or renewal policy, extension certificate, or other written statement of coverage continuance, and no original or renewal premium notice of insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicles shall be issued, delivered, or rendered unless there is imprinted on, or is attached to the front thereof, or enclosed therewith, in boldfaced type, the following legend:

**IMPORTANT NOTICE**

In addition to the insurance coverage required by law to protect you against a loss caused by an uninsured motorist.

If you have purchased liability insurance coverage that is higher than that required by law to protect you against liability arising out of the ownership, maintenance, or use of your motor vehicles covered by this policy, and you have not purchased uninsured motorist insurance coverage equal to your higher liability insurance, then:

1. Your uninsured motorist insurance coverage has increased to the limits of your liability coverage and this increase may cost you an extra premium charge; and

2. Your underinsured motorist insurance coverage has increased to the limits of your liability coverage; and

3. Your total premium charge for your motor vehicle insurance coverage may increase if you do not notify your agent or insurer within 20 days of the mailing of the new or renewal policy, extension certificate, or other written statement of coverage continuance, or the original or renewal premium notice, as the case may be.

When the insured either rejects or within twenty days fails to reject such additional uninsured or underinsured motorist insurance coverage, then the insurer shall be relieved of the obligation imposed by this subsection to attach or imprint the foregoing legend to any subsequently delivered renewal policy, extension certificate, or other written statement of coverage continuance or any subsequently mailed premium notice.

The statute mandates that the notice be given in bold-faced type and that the insured either rejects the insurance or within 20 days fails to reject the insurance; otherwise, the increased coverage continues in effect. The jury found that Mr. Gray did not receive the notice.

The knowledge of the notice could have been imputed to Mr. Gray if he was a producing agent or if he received a commission from the policy, but the jury found that he was not a producing agent nor that he received a commission from the insurance company on this policy.

The jury found that Mr. Gray did give an instruction to "renew policy as is." The policy had increased from $50,000.00 to $300,000.00 on January 1, 1983, by operation of law, and therefore, the policy should have been renewed for $300,000.00 in the absence of an instruction from Mr. Gray to specifically reduce the coverage to $50,000.00.

Consequently, it is the finding of the Court that the amount of available coverage under the Great American policy is $300,000.00.

## Issue No. 2

The second issue is the order in which the policies afford coverage to the plaintiff. The Court will list them in the order applicable.

(A) Liability Coverage on Cardea vehicle. $100,000.00 (State Farm)

(B) Underinsured coverage on McKeever vehicle as the host vehicle. $100,000.00 (Allstate)

(C) Underinsured coverage on Mr. Gray's vehicle as a non-involved vehicle but under which the plaintiff is covered as a member of the household of Mr. Gray. $300,000.00 (Great American)

## Issue No. 3

The third issue to be determined by the Court is the application of the payment of $100,000.00 to the two secondary coverages under the underinsured provisions of the law.

To my knowledge, this issue has not been decided by the Supreme Court, nor did the statute in effect on the date of the accident (July, 1983) speak to this issue. It is the view of the Court that the set-off of the payment by the liability carrier should follow the same priorities as the exposure of the underinsured carriers. The Court can find no authority to pro rate the credit between Allstate and Great American. There is no valid reason

why the host vehicle in this case should not be called upon to pay out uninsured motorist coverage before turning to an uninvolved vehicle, and therefore, the host vehicle should be entitled to the offset. If any credit is left after applying it to the host vehicle, then the balance can be credited to the remaining uninvolved vehicles.

Accordingly, the Court holds that Allstate is entitled to the full offset paid by the tortfeasor of $100,000.00.

### *Issue No. 4*

The fourth question is interest on the amount to be paid by Allstate and/or Great American. The parties had every right to litigate the complex problems involved in this case. The exercise of the right to litigate should not result in a penalty to the litigants. To require Allstate and/or Great American to pay interest in the absence of a provision in the contract and before judgment is entered against them would impose a penalty on them. The Allstate and Great American Insurance Companies are only obligated to pay out the limits of the respective policy. If the limits are exhausted before paying out the judgments in full, the insurance company cannot be required to pay any interest. When the Court enters judgment in these cases, then, possibly judgment interest will begin to run, but that question is not before the Court. The Court will not grant interest prior to the date of entry of the judgment.